GARRICK A. HOLLANDER – State Bar No. 166316
ghollander@wghlawyers.com
**WINTHROP GOLUBOW HOLLANDER, LLP**
1301 Dove Street, Suite 500
Newport Beach, CA 92660
Telephone: (949) 720-4100
Facsimile: (949) 720-4111

General Insolvency Counsel for
Debtor and Debtor-in-Possession

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA – NORTHERN DIVISION

| | |
|---|---|
| In re: | Case No. 9:22-bk-10626-RC |
| GLOBAL PREMIER REGENCY PALMS OXNARD, L.P., a California limited partnership,<br><br>Debtor and Debtor-in-Possession. | Chapter 11 Proceeding<br><br>**DEBTOR'S MOTION FOR ORDER AUTHORIZING DEBTOR TO ENTER INTO ASSESSMENT CONTRACT AND OBTAIN POST-PETITION LOAN SECURED AGAINST REAL PROPERTY; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>**[DECLARATION OF CHRISTINE HANNA IN SUPPORT HEREOF FILED CONCURRENTLY HEREWITH]**<br><br>**[11 U.S.C. §§ 363(b) and 364(d)(1)]**<br><br>DATE:     TBD<br>TIME:     TBD<br>PLACE:[1]  Courtroom 201<br>              1415 State Street<br>              Santa Barbara, CA  91301 |

---

[1] The hearing on the Motion will be scheduled to be heard via Zoom.  Please check the Court's calendar just prior to the hearing to confirm. http://ecf-ciao.cacb.uscourts.gov/CiaoPosted/.

265082

1

## **<u>TABLE OF CONTENTS</u>**

2

MEMORANDUM OF POINTS AND AUTHORITIES .......................................................... 3

I.      INTRODUCTION ................................................................................................. 3

II.     STATEMENT OF FACTS .................................................................................... 3
          A.      Background of Debtor.......................................................................... 3
          B.      Secured Debt ....................................................................................... 5
          C.      PACE Financing .................................................................................. 5
          D.      The Assessment Contract (Debtor-in-Possession Financing) .......... 6
          1.      Uses of Post-Petition Financing......................................................... 6
          2.      Summary of Proposed Financing Terms............................................. 7

III.    THE COURT SHOULD APPROVE AND AUTHORIZE THE DEBTOR
       TO ENTER INTO THE ASSESSMENT CONTRACT ........................................... 9

          A.      Section 363(b) of the Bankruptcy Code Authorizes the Debtor to
                 Enter into the Assessment Contract .................................................... 9
          B.      The Debtor's Notice to Creditors of its Intention to Enter
                 into the Assessment Contract is Sufficient to Satisfy the
                 Requirements of Section 363(b) ....................................................... 10
          C.      To the Extent Court Approval is Necessary, the Debtor's GP
                 should be Authorized to Amend the Debtor's Limited Partnership
                 Agreement and the GP Operating Agreement to Comply with Certain
                 Requirements of the DIP Lender .................................................... 12

IV.     THIS COURT MAY APPROVE AND AUTHORIZE THE DEBTOR
       TO ENTER INTO A POST-PETITION SECURED FINANCING
       ARRANGEMENT.................................................................................................. 13

          A.      The Bankruptcy Code Authorizes the Debtor to Obtain
                 Secured Financing.............................................................................. 13
          B.      California Law Provides the CSCDA with a Lien Senior to
                 Pre-Existing Private Liens for Loans Made Pursuant to
                 Contractual Assessments .................................................................. 14

V.      DIP LENDER IS ENTITLED TO A GOOD FAITH DETERMINATION
       PURSUANT TO SECTIONS 364(e) ................................................................... 18

VI.     THE COURT SHOULD DESIGNATE CHRISTINE HANNA AS
       THE PERSON IN CONTROL OF THE DEBTOR PURSUANT TO
       11 U.S.C. § 1107(a) AND F.R.B.P. 9001(5) ..................................................... 19

VII.    CONCLUSION.................................................................................................... 21

# TABLE OF AUTHORITIES

**Cases**

In re Adam's Apple,
   829 F.2d 1484, 1489 (9th Cir. 1987) ........................................................................ 18

In re American Media Distribs., LLC,
   216 B.R. 486, 489 (E.D.N.Y.1998) ........................................................................ 13

Anchor Sav. Bank FSB v. Sky Valley, Inc.,
   99 B.R. 117, 122 (N.D.Ga. 1989) ........................................................................ 14

Bank v. Bell (1923)
   62 Cal.App. 320 ........................................................................................................ 16

Bland v. Farmworker Creditors,
   308 B.R. 109, 113 (S.D. Ga. 2003) quoting 2C Bankr.Service L.Ed. § 20:380 (Nov.2003)....... 14

Committee of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.),
   722 F.2d 1063, 1069 (2d Cir. 1983) ........................................................................ 9

In re Continuum Care Services, Inc.,
   375 B.R. 692, 694 (Bankr.S.D.Fla. 2007) ............................................................ 20

In re Cooper Commons, LLC,
   424 F.3d 963, 969 (9th Cir. 2005)
   (opinion amended and superseded by 430 F.3d 1215, 1219 (9th Cir. 2005)............... 18

In re Copy Crafters Quickprinting, Inc.,
   92 B.R. 973, 983 (Bankr. N.D.N.Y. 1988) ............................................................ 11

In re Crystal Apparel,
   220 B.R. at 830 (citing In re Caldor, 193 B.R. 182, 186 (Bankr. S.D.N.Y. 1996)..................... 11

In re Curlew Valley Associates,
   14 B.R. 506, 513-514 (Bankr. D.Utah 1981)........................................................ 10

Daggett v. Colgan (1891)
   92 Cal.53 .................................................................................................................. 16

In re Derivium Capital, LLC,
   2010 WL 11719990, at *3 (Bankr.D.S.C. 2010) .................................................. 20

Dressman v. Farmers' & Traders National Bank of Covington (1897)
   38 S.W. 1052............................................................................................................. 17

265082

Frostbaum v. Ochs,
  277 B.R. 470, 475 (E.D.N.Y. 2002) ................................................................................. 10

German Savings & Loan Soc'y v. Ramish (1902)
  138 Cal. 120, 125 ................................................................................................................. 17

In re Girard Medical Center,
  1990 WL 56486, *2 (Bankr. E.D.Pa. 1990)......................................................................... 9

Hollenbeck-Bush Planing Mill Co. v. Amweg (1917)
  177 Cal. 159 ......................................................................................................................... 17

In re Industrial Valley Refrig. and Air Cond. Supplies, Inc.,
  77 B.R. 15, 21 (Bankr. E.D. Pa. 1987) ............................................................................... 11

In re Iorizzo,
  35 B.R. 465, 467 (Bankr.E.D.N.Y. 1983)........................................................................... 20

In re James A. Phillips, Inc.,
  29 B.R. 391, 394 (S.D.N.Y. 1983) ...................................................................................... 11

In re JFD Enterprises, Inc.,
  215 F.3d 1312, 2000 WL 560189, *5 (1st Cir. 2000)......................................................... 10

In re Johns–Manville Corp.,
  801 F.2d 60, 64 (2d Cir.1986).............................................................................................. 13

In re Levinson Steel Co.,
  117 B.R. 194, 196 (W.D. Pa. 1990)..................................................................................... 11

Lionel .................................................................................................................................... 9

In re Marvel Entm't Grp., Inc.,
  209 B.R. 832 (D. Del. 1997)................................................................................................. 12

Matter of EDC Holding Co.,
  676 F.2d 945, 947 (7th Cir.1982) ........................................................................................ 18

Matter of Gaslight Club, Inc.,
  782 F.2d 767, 771 fn. 6 (7th Cir. 1986) ............................................................................. 20

New Haven Radio, Inc. v. Meister (In re Martin-Trigona),
  760 F.2d 1334, 1346 (2d Cir. 1985)...................................................................................... 9

In re Northwest Associates, Inc.,
  245 B.R. 183, 186 (Bankr.E.D.N.Y. 1999)......................................................................... 20

265082

O'Dea v. Mitchell (1904)
     144 Cal. 374].................................................................................................... 17

Pesmen v. Bannockburn Lake Office Plaza Associates Ltd. Partnership I,
     1999 WL 356307, at *4 (N.D.Ill. 1999) ...................................................... 13

Redevelopment Agency of the City and County of San Francisco v. Pacific Vegetable Oil Corp.
     (1966) 241 Cal. App.2d 606 ......................................................................... 17

Savings in Jersey City v. Mayor and Alderman of Jersey City (1885)
     113 U.S. 506 ............................................................................................ 16, 17

In re Simasko Production Co.,
     47 B.R. 444, 449 (Bankr. D.Colo. 1985) ...................................................... 10

Stephens Indus., Inc. v. McClung,
     789 F.2d 386, 390-91 (6th Cir. 1986) ............................................................. 9

In re Thinking Machs. Corp.,
     182 B.R. 365, 368 (D.Mass.), *rev'd on other grounds*, 67 F.3d 1021 (1st Cir.1995) ................. 10

In re Wheeling-Pittsburgh Steel Corp.,
     72 B.R. 845, 849 (Bankr. W.D.Pa. 1987) ........................................................ 9

In re WPRV-TV,
     983 F.2d 336, 340 (1st Cir. 1993) ................................................................... 9

United States. Ainsworth v. Bryant (1949),
     34 Cal.2d 465 (quoting U.S. v. City of New Orleans (1878) 98 U.S. 381 .................................. 16

265082

**Statutes**

11 U.S.C. § 362 ........................................................................................................... 12
11 U.S.C. § 363 ........................................................................................................... 12
11 U.S.C. § 363(b) ............................................................................................... 1, 9, 11
11 U.S.C. § 364 ........................................................................................................... 13
11 U.S.C. § 364(d) ...................................................................................................... 14
11 U.S.C.A. § 364(d) .................................................................................................. 14
11 U.S.C. § 364(d)(1) ............................................................................................ 1, 2, 7
11 U.S.C. § 364(e) ............................................................................................. 2, 18, 19
11 U.S.C. § 1107(a) .......................................................................................... 1, 19, 21
11 U.S.C. § 1107(a) .................................................................................................... 19
11 U.S.C. § 1108 ........................................................................................................... 9

**Other Authorities**

10 Collier on Bankruptcy ¶ 9001.06 (16th 2023) ....................................................... 20
Collier on Bankruptcy, Rule 9001(5) .......................................................................... 20
2 Bankruptcy Litigation § 12:5.60 (2022) ................................................................... 13
Bankr. Proc. Manual § 9001:1 (2023 ed.) ................................................................... 20
California Streets & Highways Code §5105 ................................................................. 15
California Streets and Highways Code - Chapter 29, Part 3 of Division 7 ..................... 5
California Streets and Highways Code - Chapter 29, Section 5898.14 ......................... 16
California Streets and Highways Code - Chapter 29, Section 5898.30 ................... 14, 15
California Streets and Highways Code Sections 8500 ............................................. 6, 14
California Streets & Highways Code §10100.2 ............................................................ 15
California Streets & Highways Code §10100.3 ............................................................ 15
Chou, Corporate Governance in Chapter 11, 65 Am. Bankr. L.J. 559, 577 (1991) ....... 20
Gov. Code - Article 13.5 of Chapter 4 of Part 1 of Division 2 of Title 5 Section 53938 ............... 15
Gov. Code §53313.5(i) ................................................................................................ 16
Gov. Code §53313.5(ii) ............................................................................................... 16
Gov. Code §53313.5(j). ................................................................................................ 16
Improvement Bond Act of 1915 ..................................................................................... 6
Improvement Act of 1911 ...................................................................................... 15, 16
James Buchwalter, Construction and Application of Bankruptcy "Superpriority Lien" or "Priming
     Lien" Provision, 11 U.S.C.A. § 364(d), 63 A.L.R. Fed. 2d 563 (2012) ..................... 14
Lien Priority Law Section 53935 .................................................................................. 15
Mello-Roos Community Facilities Act of 1982 ............................................................. 16
Municipal Improvement Act of 1913 ...................................................................... 15, 16
Public Resources Code Section 26500 ......................................................................... 16
Revenue & Taxation Code §2192.1 ......................................................................... 15, 17

**Rules**

Fed. R. Bankr. P. 4001 ................................................................................................... 7
Fed. R. Bankr. P. 9001(5) ........................................................................... 1, 19, 20, 21
Local Bank. Rule 4001-2 ............................................................................................... 7

265082

Global Premier Regency Palms Oxnard, LLP, a California limited liability partnership, the debtor and debtor-in-possession in the above Chapter 11 proceeding (the "Debtor"), hereby moves this Court (the "Motion"), pursuant to the provisions of Sections 363(b) and 364(d)(1) of the Bankruptcy Code, for an Order in a form substantially similar to the order attached as **Exhibit 1** to the Declaration of Christine Hanna ("Hanna Declaration" filed concurrently herewith, granting the following relief:

1.      Authorizing the Debtor to enter into with the California Statewide Community Development Authority (the "CSCDA"), as the California joint exercise of powers authority that operates the California Open PACE Program, and White Oak Global Advisors, LLC ("White Oak"), as the PACE Administrator (collectively, the "DIP Lender"), the Assessment Contract in substantially the same form attached as **Exhibit 2** to the Hanna Declaration, and any additional agreements, documents, instruments, and certificates in connection therewith and necessary or desirable to perform all obligations contained therein (collectively, the "Assessment Contract");

2.      Authorizing the Debtor to obtain post-petition PACE assessment financing in an aggregate maximum principal amount of up to $12,800,000 (the "DIP Financing"), pursuant to the terms and conditions of the Assessment Contract and any orders entered in connection therewith, or otherwise delivered in connection therewith;

3.      To the extent Court approval is necessary, authorizing the Debtor's General Partner to amend the Debtor's Limited Partnership Agreement and authorizing the General Partner to amend its Operating Agreement in order to comply with certain requirements of the DIP Lender;

4.      Designating Christine Hanna as the person in control of the Debtor with authority to act on behalf of the Debtor, pursuant to 11 U.S.C. § 1107(a) and F.R.B.P. 9001(5), and in particular, authorizing Christine Hanna on behalf of the Debtor to execute and deliver the Assessment Contract and all such other documents and to perform such other and further acts as may be necessary or desirable in connection with the Assessment Contract and the closing of the DIP Financing pursuant thereto;

265082

5.      Ordering that the Assessment Obligations[1] under the Assessment Contract shall be secured pursuant to 11 U.S.C. § 364(d)(1) and applicable California state law by a first priority lien against the Debtor's real property located at 1029 Bismark Way, Oxnard, California (the "Property"), and that any delinquent Assessment Obligations shall be collected, along with applicable penalties, interest and costs, in accordance with California law.

6.      Granting the foregoing relief with appropriate findings of the Court, including, but not limited to, establishing that the credit was extended in good faith, and that CSCDA and the DIP Lender are entitled to the protection afforded by Bankruptcy Code Section 364(e); and

7.      Granting such other and further relief as the Court deems just and proper.

This motion is made and based the Memorandum of Points and Authorities attached hereto, the Declarations of Christine Declaration (the "Hanna Declaration") and Eric J. Weissman (the "Weissman Declaration") appended hereto, and any other such evidence, both oral and documentary, as the Court may consider prior to or at the hearing on this Motion.

**WHEREFORE**, the Debtor prays that the Court enter an order granting the relief requested above, and such additional relief as the Court deems just and proper.

DATED: July 24, 2023                    **WINTHROP GOLUBOW HOLLANDER, LLP**


By:    _/s/  Garrick A. Hollander_
          Garrick A. Hollander
General Insolvency Counsel for Debtor and Debtor-in-Possession

---

[1] All capitalized terms not defined herein shall have the same meaning as set forth in the Assessment Contract.

265082

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## INTRODUCTION

The proposed DIP Financing is critical to the Debtor's ability to emerge from Chapter 11 and pave the way to pay its creditors.  The Debtor cannot afford to incur the expense of litigating an anticipated hotly contested plan confirmation process, nor face the risk of the severe consequences (losing all of its assets to its senior secured creditor) in the event it was unable to successfully confirm a plan of reorganization.  The Debtor has reached an agreement with its senior secured creditor, JKO Group, LLC ("JKO"), which provides for a restructuring of the Debtor's obligations, and requires the DIP Financing.[1]  The agreement with JKO eliminates the risks and significant costs associated with plan confirmation in this case, and paves the way for prompt emergence from Chapter 11 and payment to creditors.  In order to effectuate the JKO compromise and disposition of this case, the Debtor must promptly obtain DIP Financing.  The Debtor believes that approval and use of the DIP Financing provides creditors with the greatest opportunity for payment, and thus is in the best interest of creditors.

## II.

## STATEMENT OF FACTS

### A.    Background of Debtor

The Debtor was formed in 2014 to purchase land and develop and operate an assisted living/memory care facility in Oxnard, California.  Global Premier America #3, LLC ("GP") is the general partner of the Debtor and has complete control over the decision making of the Debtor.[2]  Pursuant to the GP's Operating Agreement and amendments thereto, the Managers of the GP, which are defined as Christine Hanna and Andrew Hanna, together or separately, each have full

---

[1] The Debtor will be filing a motion for approval of compromise with JKO and dismissal of case to be heard at or about the same time as the final hearing on this motion.

[2] See, e.g., Section 10(a) (General Partner shall be solely responsible for the day-to-day operations of the Partnership business and shall have all rights and powers generally conferred by law or necessary, advisable or consistent in connection therewith, or in connection with accomplishing the purposes of the Partnership as set forth in Section 3).  A true and correct copy of the Debtor's limited partnership agreement is attached as **Exhibit 3** to the Hanna Declaration.

265082

authority to manage and operate the GP.[1]  Thus, Christine Hanna has authority to manage and operate the GP, and thus, manage and operate the Debtor.  In practice, Christine Hanna has and continues to be the "person in control" of the Debtor.  Accordingly, Christine Hanna had authority to file, on behalf of the Debtor, a petition for relief under Chapter 11 of the Bankruptcy Code, enter into the proposed DIP Financing, and file this Motion.

The Debtor was initially funded with $10 million of investment from foreign investors, who invested in the Debtor pursuant to a program of the United States government to allow foreign investors to make investments in the United States in order to obtain residency status. This program is designed to stimulate the U.S. economy through job creation and capital investment.  The Debtor's successful completion and operation of this project will preserve jobs, provide creditors and equity with the greatest possibility for recovery, and provide the foreign investors with the ability to obtain residency in the United States.

The Debtor owns and since January 2021, with its wholly owned non-debtor subsidiary, Global Regency Oxnard Senior Care Services LLC, a California limited liability company, dba Regency Senior Living, operates an assisted living/memory care facility located at the Property. Regency Senior Living provides housing and a full spectrum of care and services to fragile seniors in need of a moderate level of medical assistance, including specialized memory care for seniors who suffer from Alzheimer's Disease and other forms of dementia.  The Debtor's subsidiary employs approximately 60 persons. The Debtor's sole revenue source is the rental income and distributions, if any, from its sole tenant, Regency Senior Living.  Since the Debtor's completion of the development of its Property and Regency Senior Living's commencement of its operations is in the relative early phase of a start-up, Regency Senior Living does not yet generate sufficient profits to pay rent to the Debtor.  Accordingly, the Debtor cannot currently pay its obligations to JKO.

---

[1] See, for example, sections 1.7 and 2(e) of the First Amendment to Operating Agreement of Global Premier America #3, LLC.  A true and correct copy of the GP's Operating Agreement and amendment thereto are attached collectively as **Exhibit 4** to the Hanna Declaration.

265082

1
    **B.**    <u>**Secured Debt**</u>

2
    On June 27, 2018, the Debtor obtained a loan from Nano Banc in the amount of

3
$15.5 million to purchase the Property and build and operate an assisted living/memory care

4
facility at the Property.  The Nano Bank loan was evidenced by, among other things, a

5
Construction Loan Agreement and Promissory Note.  In connection with the loan, the Debtor

6
provided a Deed of Trust in favor of Nano Bank.  Nano Bank also filed a UCC-1 financing

7
statement dated August 30, 2018 with the California Secretary of State.

8
    On March 23, 2020, the loan agreement was modified to increase the amount of the Loan

9
to $23 million.  The Debtor also executed a Commercial Security Agreement, pursuant to which

10
the Debtor granted a security interest in collateral, including inventory, accounts (including but

11
not limited to all health-care-insurance receivables), and cash.  On November 19, 2020, the parties

12
modified the loan agreement to increase the loan from $23 million to $25.5 million, and assign a

13
deposit account in the amount of $500,000 held at Nano Bank as additional security.

14
    On or about April 22, 2022, Nano sold and assigned to JKO 100% of Nano's interests in

15
its claims against the Debtor.  As of the Petition Date, JKO asserts a secured claim against the

16
Debtor's Assets in the amount of approximately $28 million.  As of the Petition Date, the Debtor

17
had $64.31 in cash and $7,317.87 in accounts receivable from Regency Senior Living.

18
    Top Tier Painting and ArtMex Artistic Design, Inc. also assert secured claims against the

19
Property in the amounts of $87,147 and $22,660, respectively. These asserted secured claims are

20
based on alleged mechanics lien rights arising from contracting services provided to the Debtor.

21
    **C.**    <u>**PACE Financing**</u>

22
    The CSCDA established the CSCDA Open PACE Program to allow the financing or

23
refinancing of certain distributed generation renewable energy sources, energy efficiency

24
improvements, water efficiency improvements, seismic strengthening improvements, electric

25
vehicle charging infrastructure and such other work, infrastructure or improvements as may be

26
authorized by law from time to time that are permanently fixed to real property (collectively, the

27
"Authorized Improvements") through the levy of contractual assessments pursuant to Chapter 29

28
of Part 3 of Division 7 of the Streets and Highways Code ("Chapter 29") and the issuance of

265082

1   improvement bonds under the Improvement Bond Act of 1915 (Streets and Highways Code

2   Sections 8500 and following) upon the security of the unpaid contractual assessments.  The

3   CSCDA provides financing to property owners only for Authorized Improvements.  The CSCDA

4   obtains its source of financing and refinancing of the installation of Authorized Improvements

5   from proceeds of California Statewide Communities Development Authority Open PACE limited

6   obligation improvement bonds.

7         The semi-annual payment obligations required to be paid by borrower are called

8   "Assessments," and are actually included in, and become part of, the building owner's real

9   property tax bill.  Pursuant to California statute, the Assessments are secured by a statutory lien

10  against the borrower's real property, coequal to and independent of the county's real property tax

11  lien, senior in priority to all existing secured creditors.  California law provides for the sale of the

12  borrower's real property to collect delinquent installments and related penalties, interest and costs;

13  amounts that have not yet been billed may not accelerated. The CSCDA's lien shares para passu

14  priority with the County for any unpaid property taxes.

15        **D.      The Assessment Contract (Debtor-in-Possession Financing)**

16        The Debtor has applied with, and been qualified by, the CSCDA for PACE financing of up

17  to $12,800,000 from the CSCDA's program administrator, White Oak. An affiliate of White Oak

18  will purchase the limited obligation improvement bonds sold by the CSCDA to provide financing

19  to the Debtor. In order to obtain the PACE financing, the Debtor seeks authority to enter into the

20  Assessment Contract in substantially the same form as attached to **Exhibit 2**.

21        **1.      Uses of Post-Petition Financing**

22        The following is a summary of the estimated uses of the PACE financing:

Pace Related Disbursements:

| | |
|---|---|
| Capitalized Interest Reserve for PACE Loan: | $ 2,170,000 |
| PACE Loan Expenses | 386,471 |
| Administrative Expenses | 750,000 |
| Working Capital for Debtor | 150,000 |
| Past due property taxes | 102,581 |

JKO Related Disbursements:

| | |
|---|---|
| Interest Reserve for JKO post-confirmation | 1,068,000 |
| Payment on Debt Owing to JKO | 8,172,948 |
| Total | $12,800,000 |

265082

1    The DIP Financing will enable the Debtor to restructure its debt with JKO and emerge

2    from Chapter 11, thereby paving the way for the Debtor to pay its creditors.

3        **2.    Summary of Proposed Financing Terms[1]**

4        The following is a summary of the material terms pursuant to which DIP Lender has

5    agreed to advance funds to the Debtor.

| | |
|---|---|
| **Financing Amount:** | The lesser of (i) $12,800,000 or (ii) 30% of Property's as-stabilized value as determined by DIP Lender in its sole discretion (the "Financing Amount"). |
| **Interest Rate:** | Fixed rate throughout the Term to be equal to the greater of:<br>(A) 7.50%; and<br>(B) The 10-year U.S. Treasury benchmark rate plus 3.50% |
| **Transaction Fee:** | On the Closing Date from Financing proceeds, Owner would pay to capital provider a transaction fee equal to 1.00% of the Financing Amount. |
| **Priority/Security:** | Debtor would agree to a contractual assessment on the Property that would be recorded with the local tax authority. Delinquent assessments are subject to the same process and penalties as property taxes. No personal or corporate guarantees are required for the DIP Financing. All delinquent Assessment Obligations shall be secured against the Property pursuant to California law and §364(d)(1). |
| **Use of Proceeds** | The Financing will utilize the CSCDA's three-year lookback period to refinance PACE-eligible improvements already completed to the Property. Accordingly, proceeds remaining after funding (i) Capitalized Interest and (ii) fees and costs associated with the DIP Financing may be used in accordance with Debtor's plan of reorganization (the "*Net Proceeds*"), including to repay existing indebtedness and/or fund operations. The Debtor may use the proceeds from the DIP Financing as set forth in the DIP Order and the cash flow budget attached as **Exhibit 3** to the Weissman Declaration. |
| **Target Closing Date:** | July 14, 2023, with the actual date of closing being defined as the "Closing Date." |
| **Term:** | The lesser of (i) 30 years and (ii) the cost-weighted expected useful life of funded improvements. |
| **Interest Only Period:** | Approximately seven years and two months, including the Capitalized Interest period. The exact length would be dependent upon the Closing Date. |
| **Capitalized Interest:** | Approximately $2,050,000 would be funded into a trust account at closing from the DIP Financing proceeds and used to pay interest accrued from the Closing Date to September 2, 2025. The actual amount of Capitalized Interest would vary depending on the Closing Date. |
| **Assessment Payments:** | Assessment Payments will be due concurrently with ad valorem property taxes every December 10 and April 10, starting with December 10, 2025 (the "*Payment Dates*") (Assessment Payments are not due before December 10, 2025 because interest on the DIP Financing will be capitalized through September 2, 2025).<br>On Payment Dates up to and including September 2, 2030, no principal repayments will be required.<br>Starting on December 10, 2030 and throughout the remaining Term, the Debtor would be required to make payments of approximately $588,000 on each Payment |

---

[1] See also Statement Regarding Cash Collateral or Debtor in Possession Financing [FRBP 4001; LBR 4001-2] filed concurrently herewith.

265082

| | |
|---|---|
| | Date. |
| **Prepayment Premium:** | Prepayment of the DIP Financing would be subject to the following premiums:<br>Year 1: 5.0%     Year 2: 3.0%<br>Years 3-4: 1.0%     Thereafter: None |
| **Setup and Servicing Fee:** | The following would be due in full and in cash so long as the DIP Financing has not been repaid in full:<br>• On the Closing Date, the Debtor would pay White Oak a Setup Fee equal to $1,500.  The Debtor would also pay to White Oak an annual Servicing Fee equal to $1,750 per year, payable in advance with pro rata installments due on the Closing Date and each Payment Date thereafter.<br>• Each of the foregoing fees, once paid, would be non-refundable for any reason whatsoever. |
| **Other Fees and Expenses:** | The Debtor would be required to pay White Oak's due diligence, legal and other related out-of-pocket DIP Financing expenses.  The Debtor would also be responsible for any fees and expenses charged by CSCDA, Depository Agent, Disbursement Agent, Bond Indenture Trustee, or other third party, including their legal fees.  All such amounts would be eligible uses of DIP Financing proceeds.  The following are White Oak's good-faith estimates but are subject to final determination by each respective party:<br><br>*One-Time Costs of Issuance:*<br>CSCDA Bond Issuance Fee          0.750% of Net Proceeds<br>CSCDA Legal Counsel          0.500% of Net Proceeds<br>PACE Program Fee          0.500% of Financing<br>Ventura County Recording Fee          $500<br>White Oak Legal Counsel          $30,000<br>Appraisal Roll-Forward          $2,500<br>Miscellaneous Due Diligence          $5,000<br><br>*Recurring Expenses:*<br>Ventura County Admin Fee          0.250% surcharge to each payment<br>Assessment Administrator          $11,200 setup, plus $275 per year<br>Depositary Agent          $500 upfront, plus $1,000 per year<br>Disbursement Agent          $500 upfront, plus $500 per year<br>Bond Indenture Trustee          $2,500 setup, plus $1,750 per year |
| **Representations and Warranties:** | Customary for transactions of this type as determined by White Oak, together with such others as may be required by White Oak following completion of its due diligence. |
| **Property Insurance:** | The Debtor shall maintain insurance satisfactory to White Oak with respect to Property from an insurer acceptable to White Oak; however, Owner shall not be required to purchase earthquake insurance for the Property. |
| **Collateral Appraisals:** | While any PACE obligations from the DIP Financing remain outstanding, White Oak may periodically require Property appraisals for its internal accounting or other purposes.   Upon White Oak's reasonable request, the Debtor will cooperate with such collateral appraisal firm selected and paid for by White Oak. |
| **Events of Default; Remedies:** | Customary for transactions of this type as determined by White Oak.  Remedies shall be the maximum rights permitted by California law and consistent with the enforcement of delinquent property taxes under California law, including judicial foreclosure of delinquent Assessment Payments. |
| **Conditions Precedent:** | Customary for transactions of this type as determined by White Oak, together with such others as may be required by White Oak following completion of its due diligence.  Without limiting the generality of the foregoing, White Oak currently |

-8-

| | | expects the following Conditions Precedent to be completed satisfactorily in its sole discretion:<br>(i)     Roll-forward of the existing Property appraisal;<br>(ii)    Environmental review of Property;<br>(iii)   Site inspection;<br>(iv)    ASHRAE II or equivalent energy study for the Property;<br>(v)     Legal due diligence;<br>(vi)    The Debtor's contemporaneous or prior exit from bankruptcy, with a pro forma, as-stabilized DSCR of 1.20x, credible plan for funding cash burn needed to reach stabilization, and other terms and conditions to be determined by White Oak;<br>(vii)   White Oak's KYC process;<br>(viii)  Financing Documents; and<br>(ix)    Effectiveness of the PACE special tax assessment. |
|---|---|---|
| **Other Fees and Expenses:** | | All legal, valuation, appraisal, due diligence and other fees and expenses incurred by White Oak would be paid by the Debtor. |
| **Governing Law:** | | The loan documents would be prepared by CSCDA's bond counsel and legal counsel to White Oak and would be governed by the internal laws of the State of California without regard to principles of conflicts of law. |

**III.**

**THE COURT SHOULD APPROVE AND AUTHORIZE THE DEBTOR TO ENTER INTO**

**THE ASSESSMENT CONTRACT**

A.      **Section 363(b) of the Bankruptcy Code Authorizes the Debtor to Enter into the Assessment Contract**

Section 363(b) empowers a debtor in possession to "use, sell, or lease . . . other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b). A bankruptcy court's power to authorize a transaction under Section 363(b) is to be exercised at the court's discretion. In re WPRV-TV, 983 F.2d 336, 340 (1st Cir. 1993), New Haven Radio, Inc. v. Meister (In re Martin-Trigona), 760 F.2d 1334, 1346 (2d Cir. 1985), Committee of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.), 722 F.2d 1063, 1069 (2d Cir. 1983); Stephens Indus., Inc. v. McClung, 789 F.2d 386, 390-91 (6th Cir. 1986)

In examining proposed post-petition business transactions, courts employ a deferential "business judgment" test. "A debtor-in-possession is accorded great deference as to its business judgments." In re Girard Medical Center, 1990 WL 56486, *2 (Bankr. E.D.Pa. 1990). *See also* In re Wheeling-Pittsburgh Steel Corp., 72 B.R. 845, 849 (Bankr. W.D.Pa. 1987) ("courts accord the debtor's business judgment a great amount of deference").

As a debtor-in-possession, Simpco has authority to operate the business. 11 U.S.C. § 1108. The authority to operate that business necessarily includes the

-9-

concomitant discretion to exercise reasonable judgment in ordinary business
matters.  The business of this debtor-in-possession includes oil and gas drilling
operations. Simpco's best business judgment indicates these drilling operations are
necessary and reasonable for the benefit of the estate.  The discretion to act with
regard to business planning activities is at the heart of the debtor's power.  In
exercising Simpco's business judgment of conducting its drilling operations, it has
found it necessary to obtain loans to make these endeavors possible.  This is in
accordance with the exercise of its sound business discretion.

Business judgments should be left to the board room and not to this Court.
Only in circumstances where there are allegations of, and a real potential for,
abuse by corporate insiders should the Court scrutinize the actions of the
corporation.  There are no allegations of insider abuse in this case.

In re Simasko Production Co., 47 B.R. 444, 449 (Bankr. D.Colo. 1985) (citations omitted).  See

also In re Curlew Valley Associates, 14 B.R. 506, 513-514 (Bankr. D.Utah 1981) ("the court will

not entertain objections to a trustee's conduct of the estate where that conduct involves a business

judgment made in good faith, upon a reasonable basis, and within the scope of his authority under

the Code."); Frostbaum v. Ochs, 277 B.R. 470, 475 (E.D.N.Y. 2002) ("So long as this decision

was not made arbitrarily, or in bad faith, it was appropriate for the Bankruptcy Court to accept

this decision for the benefit of the estate"); In re Thinking Machs. Corp., 182 B.R. 365, 368

(D.Mass.) (emphasizing "the high degree of deference usually afforded purely economic

decisions of trustees"), *rev'd on other grounds*, 67 F.3d 1021 (1st Cir.1995); In re JFD

Enterprises, Inc., 215 F.3d 1312, 2000 WL 560189, *5 (1st Cir. 2000) ("the trustee's business

judgment is subject to great judicial deference").

Entering into the Assessment Contract will enable the Debtor to consummate the

compromise with JKO, eliminate the risks and significant costs associated with plan confirmation,

and pave the way for prompt emergence from Chapter 11 and provide creditors with the greatest

opportunity for payment.  Accordingly, entering into the Assessment Contract is a proper exercise

of the Debtor's business judgment.

**B.**    **The Debtor's Notice to Creditors of its Intention to Enter into the Assessment
Contract is Sufficient to Satisfy the Requirements of Section 363(b)**

The purpose of imposing on a debtor the requirement to obtain court approval for a

transaction outside the ordinary course of the debtor's business is simply to provide to creditors,

who have an interest in maximizing realization from assets of the estate, an opportunity to review

1    the terms of the transaction and to object thereto if they deem the transaction not to be in their best

2    interest.  In re Crystal Apparel, 220 B.R. at 830 (citing In re Caldor, 193 B.R. 182, 186 (Bankr.

3    S.D.N.Y. 1996)).  Thus, the standard for approval of a transaction not in the ordinary course of

4    business is whether creditors have had an opportunity to review the proposed transaction, and to

5    afford those creditors an opportunity to be heard in the event that those creditors believe that the

6    transaction is not in their best interests.  In re James A. Phillips, Inc., 29 B.R. 391, 394 (S.D.N.Y.

7    1983) ("[T]he apparent purpose of requiring notice only where the use of property is extraordinary

8    is to assure interested persons of an opportunity to be heard concerning transactions different from

9    those that might be expected to take place so long as the debtor-in-possession is allowed to

10    continue normal business operations...").

11          The Debtor is seeking an order allowing it to obtain financing to avoid the risk of losing

12    the Property and restructure its obligations to JKO.  The proposed financing will enable the

13    Debtor to sustain its operations and continue providing ongoing nursing care to patients.  Creditors

14    will receive notice of the hearing on the Motion.  Therefore, the Debtor submits that such notice is

15    sufficient to meet the requirements of Section 363(b).

16          The Debtor's entry into the Assessment Contract, which will enable the Debtor to preserve

17    its interests in the Property and continue to provide patients with nursing care, thereby providing

18    creditors with the greatest opportunity for recovery, is an exercise of the Debtor's sound business

19    judgment. See, e.g., In re Copy Crafters Quickprinting, Inc., 92 B.R. 973, 983 (Bankr. N.D.N.Y.

20    1988); In re Industrial Valley Refrig. and Air Cond. Supplies, Inc., 77 B.R. 15, 21 (Bankr. E.D.

21    Pa. 1987) (in the commonly considered context of the sale of business assets under section 363(b),

22    noting that a "sound business judgment" must justify the transaction).  See also In re Levinson

23    Steel Co., 117 B.R. 194, 196 (W.D. Pa. 1990) (approving severance pay plan as "necessary

24    incentive for continued employment" by certain of the debtor's employees).  Accordingly, with

25    the notice given to creditors set forth above, this Court should authorize the Debtor to enter into

26    the Assessment Contract.

27

28

265082

**C.    To the Extent Court Approval is Necessary, the Debtor's GP should be Authorized to Amend the Debtor's Limited Partnership Agreement and the GP Operating Agreement to Comply with Certain Requirements of the DIP Lender.**

The DIP Lender has required that the Debtor's Limited Partnership Agreement and the GP's Operating Agreement to be amended as follows:

- Pursuant to Article 4(a) of the Debtor's Limited Partnership Agreement, the term of the partnership "shall continue until December 31, 2044…"  The DIP Lender has required that the term of the partnership should be extended for an additional 30 years, through and included December 31, 2074.

- The *Operating Agreement of Global Premier America #3, LLC, A California Limited Liability Company* (inclusive of amendments thereto, the "GP Operating Agreement") currently prohibits the GP from authorizing the Debtor to incur further "indebtedness or liabilities."  The GP Operating Agreement therefore needs to be amended to permit the DIP Financing.

Pursuant to Article 17 of the Debtor's Limited Partnership Agreement, the General Partner has the authority to amend such agreement in order to comply with requests made by a lender, subject to certain exceptions not relevant here.

> **[T]he General Partner shall have the authority to amend this Agreement without any vote or other action by the Limited Partners; … (y) to make any changes requested by a lender that are requested or required to obtain financing** or add or delete any such provisions after repayment of any such loans provided that the adoption of such amendment (i) is for the benefit of and not adverse to the interests of the Limited Partners; (ii) is not inconsistent with provisions of this Agreement pertaining to the management and administration of the Partnership by the General Partner; and (iii) does not affect the limited liability of the Limited Partners or the status of the Partnership as a partnership for Federal income tax purposes.

The Debtor believes that amending the Limited Partnership Agreement does not require court approval.  Courts have generally recognized that shares or equity interests in the debtor is not property of the estate, and thus the exercise of corporate governance rights does not implicate Section 362 or 363.  See e.g., In re Marvel Entm't Grp., Inc., 209 B.R. 832 (D. Del. 1997) ("[T]he

265082

1   automatic stay provisions of the Bankruptcy Code are not implicated by the exercise of

2   shareholders' governance rights."); In re American Media Distribs., LLC, 216 B.R. 486, 489

3   (E.D.N.Y.1998) ("Like those of ordinary corporate shareholders, their rights to participate in the

4   governance of the business in which they hold equity interests are neither enjoined automatically

5   nor abrogated upon the filing of a bankruptcy petition."); In re Johns–Manville Corp., 801 F.2d

6   60, 64 (2d Cir.1986) ("[T]he shareholders' right to govern their corporation[ is] a prerogative

7   ordinarily uncompromised by reorganization ...."); Pesmen v. Bannockburn Lake Office Plaza

8   Associates Ltd. Partnership I, 1999 WL 356307, at *4 (N.D.Ill. 1999) ("an automatic stay

9   generally does not affect governance issues"); 2 Bankruptcy Litigation § 12:5.60 (2022) ("The

10  automatic stay does not strip directors, shareholders, partners or members of their rights of

11  governance with respect to a corporate or partnership debtor.").

12          Accordingly, as an exercise of governance rights, the Debtor does not believe that the

13  proposed amendments to the Limited Partnership Agreement or the GP Operating Agreement

14  requires court approval.  However, in an abundance of caution and as a matter of disclosure, the

15  Debtor requests, to the extent Court approval is necessary, an order authorizing the GP to amend

16  the Debtor's Limited Partnership Agreement and its Operating Agreement in order to comply

17  with the requirements of the DIP Lender.

18                                      **IV.**

19      **THIS COURT MAY APPROVE AND AUTHORIZE THE DEBTOR TO ENTER**

20          **INTO A POST-PETITION SECURED FINANCING ARRANGEMENT**

21      **A.      The Bankruptcy Code Authorizes the Debtor to Obtain Secured Financing**

22          Section 364 of the Bankruptcy Code empowers the Court to authorize the Debtor to incur

23  debt secured by a lien on property of the estate.  In particular, Bankruptcy Code section 364

24  provides, in pertinent part:

25          (d) (1) The Court, after notice and a hearing, may authorize the obtaining of
            credit or the incurring of debt secured by a senior or equal lien on property of
26          the estate that is subject to a lien only if –

27              (A)  the trustee is unable to obtain such credit otherwise; and

28

-13-

> (B) there is adequate protection of the interest of the holder of the lien
> on the property of the estate on which such senior or equal lien is
> proposed to be granted.

A debtor may obtain financing under Section 364(d) when the following two criteria are met: (1) the debtor cannot obtain credit by another means; and (2) adequate protection is provided for the interest of the holder of the lien on the property of the estate on which such senior lien is proposed to be granted.  In this case, the Debtor seeks to obtain approval of financing pursuant to the PACE program that, pursuant to Section 8500, et. Seq. of the California Streets and Highways Code, statutorily provides for the priming of liens held by senior secured creditors, but limits collection to the amount of an Assessment due and in default.  The Debtor submits that the facts and circumstances of this case justify approval of the priming of liens.  In addition, JKO, the senior secured creditor in this case, has already consented to the approval of this loan.[1]

**B.**      **California Law Provides the CSCDA with a Lien Senior to Pre-Existing Private Liens for Loans Made Pursuant to Contractual Assessments**

Contractual assessments are given senior lien rights over pre-existing private liens.  Section 5898.30 of Chapter 29 states:

> Assessments levied pursuant to this chapter, and the interest and any
> penalties thereon shall constitute a lien against the lots and parcels of land
> on which they are made, until they are paid. Division 10 (commencing with
> Section 8500), insofar as those provisions are not in conflict with this
> chapter, Article 13 (commencing with Section 53930) of, and Article 13.5
> (commencing with Section 53938) of, Chapter 4 of Part 1 of Division 2 of
> Title 5 of the Government Code apply to the imposition and collection of
> assessments contracted for pursuant to this chapter, including, but not
> limited to, provisions related to lien priority, the collection of assessments in
> the same manner and at the same time as the general taxes of the city or

---

[1] The Debtor is relieved of any obligation to establish adequate protection of a secured creditor's interest under Section 364(d), where such secured creditor consents or otherwise fails to oppose the Motion.  See Anchor Sav. Bank FSB v. Sky Valley, Inc., 99 B.R. 117, 122 (N.D.Ga. 1989) ("[B]y tacitly consenting to the superpriority lien, those creditors relieved the debtor of having to demonstrate that they were adequately protected."); Bland v. Farmworker Creditors, 308 B.R. 109, 113 (S.D. Ga. 2003) quoting 2C Bankr.Service L.Ed. § 20:380 (Nov.2003) ("Undersecured lienholders, by tacitly consenting to superpriority lien by either not objecting or withdrawing their objections to superpriority financing under 11 U.S.C.A. § 364(d), relieved debtor of having to demonstrate that they were adequately protected."); James Buchwalter, Construction and Application of Bankruptcy "Superpriority Lien" or "Priming Lien" Provision, 11 U.S.C.A. § 364(d), 63 A.L.R. Fed. 2d 563 (2012) ("Undersecured creditors may relieve the debtor of having to demonstrate that they were adequately protected by tacitly consenting to a superpriority lien that the debtor seeks under 11 U.S.C.A. § 364(d).").

265082

county on real property, unless another procedure has been authorized by the legislative body or by statute, and any penalties and remedies in the event of delinquency and default.

Article 13.5 (commencing with Section 53938) of Chapter 4 of Part 1 of Division 2 of Title 5 of the Government Code (the "Lien Priority Law"), which is cross-referenced in Section 5898.30, was adopted by the Legislature to make uniform the priority of special assessment liens and is controlling over other applicable general and special laws. Most importantly, Section 53935 of the Lien Priority Law provides as follows:

The lien of said assessments shall be coequal to and independent of the lien for general taxes, and, except as provided in Section 53936, not subject to extinguishment by the sale of the property on account of the nonpayment of any taxes, and prior and superior to all liens, claims and encumbrances except (a) the lien for general taxes or ad valorem assessments in the nature of and collected as taxes levied by the state or any county, city, special district or other local agency; (b) the lien of any special assessment or assessments the lien date of which is prior in time to the lien date of the assessment for which the deed is issued; (c) easements constituting servitudes upon or burdens to said lands; (d) water rights, the record title to which is held separately from the title to said lands; (e) restrictions of record.

Revenue & Taxation Code Section 2192.1 provides with respect to taxes and assessments in general: "Every tax declared in this chapter to be a lien on real property, and every public improvement assessment declared by law to be a lien on real property, have priority over all other liens on the property, regardless of the time of their creation. Any tax or assessment described in the preceding sentence shall be given priority over matters including, but not limited to, any recognizance, deed, judgment, debt, obligation, or responsibility with respect to which the subject real property may become charged or liable."

The fact that Chapter 29 calls for the levy of senior lien assessments to finance privately-owned improvements for public purposes is not a dramatic departure from existing California law. See the Improvement Act of 1911,[1] the Municipal Improvement Act of 1913,[2] the Mello-Roos

---

[1] The Improvement Act of 1911 authorizes the levy of special assessments to finance, among other things, improvements on private property to prevent, mitigate, abate or control geologic hazards. Streets & Highways Code §5105.

[2] The Municipal Improvement Act of 1913 authorizes the levy of special assessments to finance, among other things, seismic- and fire safety-related improvements on private property. Streets & Highways Code §§10100.2, 10100.3.

-15-

Community Facilities Act of 1982[1] and Public Resources Code Section 26500 et seq. relating to Geologic Hazard Abatement Districts.[2]

Chapter 29 allows the levy of contractual assessments to advance the public purposes set forth in Section 5898.14 of Chapter 29:

> (a) The Legislature finds all of the following: (1) Energy and water conservation efforts, including the promotion of energy efficiency improvements to residential, commercial, industrial, agricultural, or other real property are necessary to address the issue of global climate change. (2) The upfront cost of making residential, commercial, industrial, agricultural, or other real property more energy and water efficient prevents many property owners from making those improvements. To make those improvements more affordable and to promote the installation of those improvements, it is necessary to authorize an alternative procedure for authorizing assessments to finance the cost of energy and water efficiency improvements.

The power of states and political subdivisions to levy taxes and assessments to achieve public purposes is a fundamental and long-standing principle of law in the United States. Ainsworth v. Bryant (1949), 34 Cal.2d 465 (quoting U.S. v. City of New Orleans (1878) 98 U.S. 381 ("A municipality without the power of taxation would be a body without life, incapable of acting, and serving no useful purpose….")).

California courts have concluded that public purpose may be broadly defined by legislative bodies, and California courts defer to legislative bodies in their declaration of public purpose. Daggett v. Colgan (1891) 92 Cal.53; Bank v. Bell (1923) 62 Cal.App. 320.

The fact that taxes and assessments are secured by a senior lien is also a fundamental and long-standing principle of law in the United States. Provident Institution for Savings in Jersey City v. Mayor and Alderman of Jersey City (1885) 113 U.S. 506 ("That which is given for the

---

[1] The Mello-Roos Community Facilities Act of 1982 authorizes the levy of special taxes to finance a variety of privately   owned improvements, namely (i) work to private property in order to bring it into compliance with seismic safety standards or regulations, or to repair earthquake damage (Gov. Code §53313.5(i)) and (ii) repair and abatement of damage caused to private property by soil deterioration (Gov. Code §53313.5(j)).

[2] This law authorizes a geologic hazard abatement district, which is a separate political subdivision of the State, to acquire, construct, operate, manage and maintain improvements on private or public lands, and authorizes it to make improvements to public or private structures where the legislative body determines that it is in the public interest to do so, and authorizes the levy of special assessments to finance such work. (b) The Legislature declares that a public purpose will be served by a voluntary contractual assessment program that provides the legislative body of any public agency with the authority to finance the installation of distributed generation renewable energy sources and energy or water efficiency improvements that are permanently fixed to residential, commercial, industrial, agricultural, or other real property.

265082

1    preservation or betterment of the common pledge is in natural equity fairly entitled to the first

2    rank in the tableau of claims."); German Savings & Loan Soc'y v. Ramish (1902) 138 Cal 120

3    ("The power to levy a tax for general purposes, which shall be a lien superior to all other liens,

4    prior or otherwise, is not doubted, and it is not because it is called a tax, but because of its object

5    and the necessity for raising revenue in order to execute the functions of government.");

6    Redevelopment Agency of the City and County of San Francisco v. Pacific Vegetable Oil Corp.

7    (1966) 241 Cal. App.2d 606 (citing Revenue & Taxation Code §2192.1; "… by virtue of

8    legislative enactment…, tax liens are given priority in California over private contract or mortgage

9    liens….").

10          Both California and federal courts have upheld later-in-time senior tax and assessment

11    liens in the face of procedural and substantive constitutional due process challenges by the owners

12    of a variety of subordinate property rights. See Hollenbeck-Bush Planing Mill Co. v. Amweg

13    (1917) 177 Cal. 159; Provident Institution for Savings in Jersey City v. Mayor and Alderman of

14    Jersey City (1885) 113 U.S. 506 (holding that legislative acts giving preference to liens over those

15    already created by mortgage, judgment or attachment do not violate the United States

16    Constitution); German Savings & Loan Soc'y v. Ramish (1902) 138 Cal. 120, 125 (upholding

17    assessment law under fourteenth amendment of the federal constitution). See also Dressman v.

18    Farmers' & Traders National Bank of Covington (1897) 38 S.W. 1052 [cited with approval by

19    O'Dea v. Mitchell (1904) 144 Cal. 374]: "In creating liens for improvement assessments, the

20    legislature makes secure compensation for what is, in truth, an industrial annexation of the land,

21    for the street improved is, in a sense, an appurtenance of the land which increases its value; and

22    whoever holds an interest in the land profits by the appurtenance, and ought, in justice, to be

23    subjected to the lien which secures the assessment. It is for these reasons often proper to deduce

24    … the conclusion that it gives a paramount lien to which mortgage estates or judgment liens must

25    yield." (Internal citations omitted).

26          Based on the foregoing, the DIP Lender is entitled to a lien against the Debtor's Property

27    securing the Assessment Obligations and to sell Debtor's Property in accordance with California

28    law to collect any Assessment Obligations that become delinquent and remain unpaid.

-17-

265082

# V.

## DIP LENDER IS ENTITLED TO A GOOD FAITH

## DETERMINATION PURSUANT TO SECTIONS 364(e)

Section 364(e) of the Bankruptcy Code provides that entities that extend credit in good

faith are entitled to certain protections, as follows:

> (e)  The reversal or modification on appeal of an authorization under this section
> to obtain credit or incur debt, or of a grant under this section of a priority or a
> lien, does not affect the validity of any debt so incurred, or any priority or lien
> so granted, to an entity that extended such credit in good faith, whether or not
> such entity knew of the pendency of the appeal, unless such authorization and
> the incurring of such debt, or the granting of such priority or lien, were stayed
> pending appeal.

11 U.S.C. § 364(e).

The purpose of Section 364(e) is to overcome a good faith lender's reluctance to extend

financing in a bankruptcy context by permitting reliance on a bankruptcy judge's authorization.  In

re Cooper Commons, LLC, 430 F.3d 1215, 1219 (9th Cir. 2005) (citing Matter of EDC Holding

Co., 676 F.2d 945, 947 (7th Cir.1982)).

"[T]o determine good faith we look to the integrity of an actor's conduct during the

proceedings.  Misconduct defeating good faith includes fraud, collusion, or an attempt to take

grossly unfair advantage of others.  A creditor fails to act in good faith if it acts for an improper

purpose.  Knowledge of the illegality of a transaction also defeats good faith."  In re Adam's

Apple, 829 F.2d 1484, 1489 (9th Cir. 1987) (citations and internal marks of quotation omitted).

Importantly, Adams Apple establishes that the Court presume the post-bankruptcy creditor's good

faith and then inquire to see whether the presumption can be overcome.  Id. at 1490-91.  See also In

re Cooper Commons, LLC, 424 F.3d 963, 969 (9th Cir. 2005) (opinion amended and superseded

by 430 F.3d 1215, 1219 (9th Cir. 2005)).

Applying the standards set forth in Adams Apple and the question of good faith, this Court

should find that the DIP Lender is a good faith lender.  There is no fraud, collusion, self-dealing

nor any attempt to take grossly unfair advantage of others.  The proposed DIP Financing is not

illegal, nor is there any improper purpose.  In fact, the proposed financing was designed by the

-18-

1   state of California for the very purpose for which the Debtor seeks and has already been qualified.

2   The proposed DIP Financing was negotiated at arm's-length by the parties, each of which was

3   represented by counsel.  Based on the foregoing, the DIP Lender should be entitled to a good faith

4   finding in accordance with Sections 364(e) of the Bankruptcy Code.

5                                                  **VI.**

6   **THE COURT SHOULD DESIGNATE CHRISTINE HANNA AS THE PERSON IN**

7   **CONTROL OF THE DEBTOR PURSUANT TO 11 U.S.C. § 1107(a) AND F.R.B.P. 9001(5)**

8              By this Motion, the Debtor further requests an order designating Christine Hanna as the

9   person in control of the Debtor who is authorized to act on behalf of the Debtor, pursuant to 11

10  U.S.C. § 1107(a) and F.R.B.P. 9001(5), and in particular, authorizing Christina Christine Hanna on

11  behalf of the Debtor to execute and deliver the Assessment Contract and all such other documents

12  and to perform such other and further acts as may be necessary or desirable in connection with the

13  Assessment Contract and the closing of the DIP Financing pursuant thereto.

14             Bankruptcy Rule 9001(5) provides that, where the debtor is not a natural person, the

15  Bankruptcy Court can designate a particular officer, partner or other person in control, to act on

16  behalf of such debtor:

17             When any act is required by these rules to be performed by a debtor … and the
               debtor is not a natural person: (A) if the debtor is a corporation, "debtor" includes,
18             **if designated by the court**, any or all of its officers, members of its board of
               directors or trustees or of a similar controlling body, a controlling stockholder or
19             member, or any other person in control; (B) if the debtor is a partnership, "debtor"
               includes any or all of its general partners or, **if designated by the court**, any other
20             person in control.

21  F.R.B.P. 9001(5) (emphasis added).  See also 11 U.S.C. § 1107(a) (debtor in possession has

22  virtually all of the rights, powers and duties of a trustee subject to "such limitations or conditions

23  as the court prescribes").

24             Case law has consistently interpreted Bankruptcy Rule 9001(5) and Section 1107(a) to

25  authorize the Bankruptcy Court to designate a particular individual to control and act on behalf of

26  a corporate or partnership-debtor.  "This rule permits this court to designate an individual as the

27  person in control of a corporation."  In re Continuum Care Services, Inc., 375 B.R. 692, 694

28

(Bankr.S.D.Fla. 2007).  See also In re Derivium Capital, LLC, 2010 WL 11719990, at *3

(Bankr.D.S.C. 2010) ("The Court has the authority to designate [individual member of debtor-

LLC] as the representative of Debtor pursuant to Fed. R. Bankr. P. 9001(5)…"); In re Iorizzo, 35

B.R. 465, 467 (Bankr.E.D.N.Y. 1983) ("In cases where a debtor is a corporation, the Bankruptcy

Rules provide that the Court may designate officers, directors, trustees or other controlling bodies

to be considered the debtor for this and similar purposes."). *See also* Bankr. Proc. Manual § 9001:1

(2023 ed.) ("[F.R.B.P. 9001(5)] allows the court to designate officers, partners, etc., to act on

behalf of a debtor that is not a natural person."); Chou, Corporate Governance in Chapter 11, 65

Am. Bankr. L.J. 559, 577 (1991) ("This rule [9001(5)] recognizes that the corporation, an artificial

person, cannot by itself implement the rules and operate the business. Management or controlling

persons designated by a bankruptcy court are to perform particular acts required by the rules.")

      As stated in the treatise, Collier on Bankruptcy, Rule 9001(5) authorizes the court to

"appoint" an individual to perform the duties on behalf of the corporate or partnership debtor:

>     [I]f the debtor is not a natural person but is a corporation or a partnership (both
> of which are included in the definition of "person"), **the court may appoint one
> or more individuals to perform the duties** imposed upon the debtor by these
> and other rules. If the debtor is a corporation, the debtor includes, if designated by
> the court, one or more of "any or all of its officers, members of its board of
> directors or trustees or of a similar controlling body, a controlling stockholder or
> member, or any other person in control." If the debtor is a partnership, the
> "debtor" includes any or all of its general partners or, if designated by the court,
> any other person in control.

10 Collier on Bankruptcy ¶ 9001.06 (16th 2023) (emphasis added) (footnotes omitted).

      Courts have also recognized that the person designated to act on behalf of the debtor need

*not* be someone with a formal title as an officer, shareholder or partner. See In re Northwest

Associates, Inc., 245 B.R. 183, 186 (Bankr.E.D.N.Y. 1999) ("it is clear that a court can look

beyond an individual's formal title with the Debtor corporation (or lack of formal title) to make a

determination if a party is in control of a corporation based on the party's duties and

responsibilities vis-a-vis the Debtor."); Matter of Gaslight Club, Inc., 782 F.2d 767, 771 fn. 6 (7th

Cir. 1986) (observing that Rule 9001(5) "anticipates that a person performing the duties of debtor

in possession need not be an officer, director or controlling shareholder" but rather can be "any

265082

1  other person in control").

2        As set forth in the Hanna Declaration, Global Premier America #3, LLC ("GP") is the

3  general partner of the Debtor and has complete control over the decision making of the Debtor.

4  Pursuant to the GP's Operating Agreement and amendments thereto, the Managers of the GP,

5  which are defined as Christine Hanna and Andrew Hanna, together or separately, each have full

6  authority to manage and operate the GP.[1]  Thus, Christine Hanna has authority to manage and

7  operate the GP, and thus, manage and operate the Debtor.  In practice, Christine Hanna has and

8  continues to be the "person in control" of the Debtor.  Accordingly, Christine Hanna had authority

9  to file, on behalf of the Debtor, a petition for relief under Chapter 11 of the Bankruptcy Code,

10  enter into the proposed DIP Financing, and file this Motion.

11        The parties have requested confirmation of Christine Hanna's authority to act on behalf of

12  the Debtor.  Accordingly, the Debtor requests that Christine Hanna be formally designated as the

13  person who is authorized to act on behalf of the Debtor, pursuant to 11 U.S.C. § 1107(a) and

14  F.R.B.P. 9001(5), and in particular, authorizing Christina Christine Hanna to execute and deliver

15  the Assessment Contract and all such other documents and to perform such other and further acts

16  in connection with the Assessment Contract and the closing of the DIP Financing.

17                                          **VII.**

18                                     **CONCLUSION**

19        Based on the foregoing, the Debtor respectfully requests that the Court grant the relief

20  requested herein.

21  DATED: July 24, 2023                    **WINTHROP GOLUBOW HOLLANDER, LLP**

22

23                                          By:____/s/  *Garrick A. Hollander*_____

24                                              Garrick A. Hollander
                                                Peter W. Lianides
25                                              General Insolvency Counsel for
                                                Debtor and Debtor-in-Possession
26

27  ─────────────────────
    [1] See, for example, sections 1.7 and 2(e) of the First Amendment to Operating Agreement of Global Premier America
28  #3, LLC.  A true and correct copy of the GP's Operating Agreement and amendment thereto are attached collectively
    as **Exhibit 4** to the Hanna Declaration.

                                          -21-

                                                                                    265082

**PROOF OF SERVICE OF DOCUMENT**

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:  1301 Dove Street Suite 500, Newport Beach, CA 92660.

A true and correct copy of the foregoing document entitled: **DEBTOR'S MOTION FOR ORDER AUTHORIZING DEBTOR TO ENTER INTO ASSESSMENT CONTRACT AND OBTAIN POST-PETITION LOAN SECURED AGAINST REAL PROPERTY; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF CHRISTINE HANNA IN SUPPORT HEREOF FILED CONCURRENTLY HEREWITH** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1**.  **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **July 24, 2023**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Michael J Conway** - MConway@gblawllp.com, msingleman@gblawllp.com; rsoll@gblawllp.com
- **James R Felton** - jfelton@gblawllp.com, pstruntz@gblawllp.com; msingleman@gblawllp.com
- **Brian David Fittipaldi** - brian.fittipaldi@usdoj.gov
- **Garrick A Hollander** - ghollander@wghlawyers.com, jmartinez@wghlawyers.com; svillegas@wghlawyers.com
- **Mike D Neue** - m.neue@geracillp.com, a.lewis@geracillp.com
- Jeremy H Rothstein - jrothstein@gblawllp.com, msingleman@gblawllp.com; rsoll@gblawllp.com
- **Matthew J Stockl** - mstockl@wghlawyers.com, jmartinez@wghlawyers.com; svillegas@wghlawyers.com
- **United States Trustee (ND)** - ustpregion16.nd.ecf@usdoj.gov

**2.  SERVED BY UNITED STATES MAIL**:  On **July 24, 2023**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

**SEE ATTACHED SERVICE LIST**

**3.  SERVED BY OVERNIGHT MAIL,** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| July 24, 2023 | Silvia Villegas | /s/ Silvia Villegas |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

265082

**Debtor**
Global Premier Regency Palms Oxnard
c/o Christine Hanna Reg Agent
1900 Main Street, Suite 315
Irvine, CA 92614

United States Trustee (LA)
915 Wilshire Blvd., #1850
Los Angeles, CA 90017

**Global Premier Regency
Palms Oxnard
Master Mailing List 260314**

Global Premier America, LLC
c/o Christine Hanna Reg Agent
1900 Main Street, Suite 315
Irvine, CA 92614

Global Regency Oxnard Senior
Care Services, LLC
1900 Main Street, Suite 315
Irvine, CA 92614

Global Premier Development, Inc.
c/o Registered Agents Inc.
Registered Agent
1401 21st Street, Suite R
Sacramento, CA 95811

Andrew Hanna
1900 Main Street, Suite 315
Irvine, CA 92614

Christine Hanna
1900 Main Street Suite 315
Irvine, CA 92614

Northern Division
1415 State Street,
Santa Barbara, CA 93101-2511

Allied Senior Living Resources Attn: Corporate
Officer
107 N Relno Rd #145
Newbury Park, CA 91320-371

20 Largest Creditor
Global Bancorp
c/o Nina Celia Hanna (Registered Ag
1900 Main Street, Suite 315
Irvine, CA 92614

20 Largest Creditor
GMEP Engineering
Attn: Corporate Officer
3 MacArthur Place Suite 855
Santa Ana, CA 92707
Moved, New Address Below
Rtd Mail 10/22 New Address Below

20 Largest Creditor
Hanson Bridgett LLP
Attn: Corporate Officer
425 Market Street, 26th Floor
San Francisco, CA 94105

20 Largest Creditor
Cohn Reznick
Attn: Kash Hussain
1900 Avenue of the Stars, 28th Floor
Los Angeles, CA 90067
Rtd Mail 1/2023 UTF

20 Largest Creditor
Herc Rentals, Inc.
Attn: Corporate Officer
27500 Riverview Center Blvd.
Bonita Springs, FL 34134

20 Largest Creditor
Global Realty & Investment Corp.
Attn: Corporate Officer
1900 Main Street Suite 315
Irvine, CA 92614

20 Largest Creditor/Secured
Direct Supply, Inc.
Attn: Corporate Officer
6635 W. Champions Way
Milwaukee, WI 53223

20 Largest Creditor
Art Mex Artistic Iron
Attn: Corporate Officer
1247 Mercantile St Suite B
Oxnard, CA 93030

20 Largest Creditor
GCW Consulting
Attn: Corporate Officer
4206 Great Plains Dr NE
Salem, OR 97305

20 Largest Creditor
JTC USA Holdings
Attn: Corporate Officer
50 W. San Francisco St Suite 300
San Jose, CA 95113

20 Largest Creditor
StudioSix5
Attn: Corporate Officer
811 Barton Springs Road Suite 800
Austin, TX 78704

20 Largest Creditor/Secured
Top Tier Painting
Attn: Corporate Officer
301 E Wooley Rd
Oxnard, CA 93030

20 Largest Creditor
Pacific Rim Law Group
Attn: Corporate Officer
7700 Irvine Center Dr, #800
Irvine, CA 92618

20 Largest Creditor
Wilshire Pacific Capital Advisors,
Attn: Eric J. Weissman
8447 Wilshire Blvd., Suite 202
Beverly Hills, CA 90211

20 Largest Creditor
Pinnacle Surety
Attn: Corporate Officer
151 Kalmus Dr Suite A-201
Costa Mesa, CA 92626

20 Largest Creditor
St. George Construction
Attn: Corporate Officer
7839 Adwen Street
Downey, CA 90241

20 Largest Creditor
GMEP Engineering
Attn: Corporate Officer
20341 Irvine Ave. D3
Newport Beach, CA 92660

Assisted Living Connections
Attn Corporate Officer
Glenn Podell / Kelila Heller
5412 Mark Ct.
Agoura Hills, CA 91301

BrandConnex, LLC
Attn: Corporate Officer
99 Wood Avenue South
Suite 304
Iselin, NJ 08830-2715

CohnReznick LLP
c/o Jeanna Spezzacatena
c/o CohnReznick LLP
14 Sylvan Way 3rd Fl
Parsippany NJ 07054-3835

Bestway Laundry Solutions
Attn: Corporate Officer
1035 East Third Street
Corona, CA 92879-7476

CDF Labor Law LLP
Attn: Corporate Officer 18300 Von Karman
Ave Suite 800
Irvine, CA 92612

Cohn Reznick
Attn: Kash Hussain
21600 Oxnard Street, Suite 700
Woodland Hills, CA 91367

Secured
Direct Supply, Inc.
c/o CSC Lawyers Incorp. Svs.
2710 Gateway Oaks Drive, Suite 150N
Sacramento, CA 95833

Employment Dev. Dept.
Bankruptcy Group MIC 92E
PO Box 826880
Sacramento, CA 94280-0001

Franchise Tax Board
Bankruptcy Section MS: A-340
PO Box 2952
Sacramento, CA 95812-2952

Secured
Herc Rentals, Inc.
c/o C T Corporation System (Register
330 N. Brand Blvd. Ste 700
Glendale, CA 91203

Internal Revenue Service
PO Box 7346
Philadelphia, PA 19101-7346

Secured
JKO Group, LLC
Attn: Corporate Officer
15303 Ventura Blvd., Suite 1650
Sherman Oaks, CA 91403

Secured
JKO Group LLC
Attn: Steve Fenster
15303 Ventura Blvd #1650
Sherman Oaks, CA 91403

Secured
JKO Group, LLC
c/o Capital Services, Inc.
Registered Agent
108 Lakeland Ave.
Dover, DE 19901

Los Angeles County Tax Collector
PO Box 54110
Los Angeles, CA 90054-0110

Magdy Hanna
1900 Main Street, Suite 315
Irvine, CA 92614

Contempo Creations
Attn: Corporate Officer
3943 Irvine Blvd , #208
Irvine, CA 92602-2400

Michael Best & Friedrich LLP
Attn: Stephen A. Aguilar, Esq.
620 Congress Ave, Suite 200
Austin, TX 78701

Secured
Nano Banc
Attn: Aman Haseeb
7755 Irvine Center Drive, #300
Irvine, CA 92618

National Affordable Communities Inc
Attn: Christine Hanna
1900 Main Street, Suite 315
Irvine, CA 92614

State Board of Equalization
Sp. Operations, Bkcy Team,
MIC: 74
PO Box 942879
Sacramento, CA 94279-0074

State Board of Equalization
Acct. Information Group, MIC: 29
PO Box 942879
Sacramento, CA 94279-0029

Secured
Top Tier Painting, Inc.
c/o Jorge Antonio Galarza
(Registered Agent)
2051 Via Veneto
Camarillo, CA 93010

Ventura County
Treasurer-Tax Coll.
800 S. Victoria Ave.
Ventura, CA 93009

W.W. Grainger, Inc.
Attn: Kimberly Fara, Sp. Coll Assoc
401 South Wright Road
Janesville, WI 53546

Attorneys for St. George Construction, Inc.
GERACI LAW FIRM
Attn: Mike Neue, Esq.
90 Discovery
Irvine, CA 92618

Meridian Senior Living, LLC
Attn: Robert Sweet, EVP
~~1300 Spring Street, Suite 205~~
~~Annapolis, MD 21401~~
Rtd Mail 11/2022 UTF

Coastal Occupational
Attn: Corporate Officer
1901 Outlet Center Dr #100
Oxnard, CA 93036-0669

Connie De La Rosa
9452 Telephone Rd 276
Ventura, CA 93004-2600

Caring.com
Attn: Corporate Officer
PO Box 7689
San Francisco, CA 94120-7689

Grainger Inc.
Attn: Corporate Officer
DEPT 885855025
Palatine, IL 60038-0001

Green MEP Engineering Consulting
20341 Irvine Ave D3
Newport Beach, CA 92660-0228

HD Supply Facilities Maintenance
Attn: Corporate Officer
PO Box 509058
San Diego, CA 92150-9058

JKO Group, LLC
2549 Eastbluff Dr #720
Newport Beach, CA 92660-3500

One on One Sherpa LLC
Attn: Corporate Officer
PO Box 749405
Atlanta, GA 30374-9405

PointClickCare Technologies Inc.
Attn: Corporate Officer
PO BOX 674802
Detroit, MI 48267-4802

Jackson Lewis PC
Attn: Corporate Officer
PO Box 416019
Boston, MA 02241-6019

Nursecore Management
Services-NY
Attn: Corp Officer
DEPT# 41753
Dallas, TX 75265

Polly Boothe
G5 Search Marketing Inc
Attn: Corp Officer
P O Box 843274
Dallas, TX 75284-3274

Sea Breeze Landscapes
Attn: Corporate Officer
PO Box 4204
Chatsworth, CA 91313-4204

Sysco Ventura, Inc
Attn: Jessica Lindgren/Corp Officer
1390 Enclave Parkway
Houston, TX 77077-2025

The Home Depot Pro
Attn: Corporate Officer
PO Box 404284
Atlanta, GA 30384-4284

The Home Depot Pro Institutional - Bankruptc
801 West Bay Street
Jacksonville, FL 32204-1605

(p)LOS ANGELES COUNTY TREASURER
AND TAX COLLE
ATTN BANKRUPTCY UNIT
PO BOX 54110
LOS ANGELES CA 90054-0110